UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES S. RENCHENSKI,              :
                                    :
            Plaintiff,              :CIVIL ACTION NO. 3:06-CV-278
                                    :
            v.                      :(JUDGE CONABOY)
                                    :(Magistrate Judge Smyser)
THOMAS WILLIAMS, et al.,            :
                                    :
            Defendants.             :
_____

**MEMORANDUM**

Here we consider Magistrate Judge J. Andrew Smyser's Report and Recommendation (Doc. 51) in which Magistrate Judge Smyser recommends Defendants' Motion to Dismiss the Amended Complaint (Doc. 39) be granted and Plaintiff's Amended Complaint (Doc. 29) be dismissed. This 42 U.S.C. § 1983 action requires us to consider whether Plaintiff Charles S. Renchenski's constitutional rights are violated by the Pennsylvania Department of Corrections' ("DOC") recommendation that he participate in a sex offender treatment program as well as the methodology used in making that recommendation. For the reasons that follow, we conclude the actions complained of do not rise to the level of a constitutional violation and, therefore, cannot form the basis of this 42 U.S.C. § 1983 action.

Also pending before the Court are the following motions filed subsequent to the issuance of the Report and Recommendation: Plaintiff's Leave to Amend the Complaint (Doc. 67), Motion to

1

Strike Plaintiff's Second Amended Complaint (Doc. 71) and
Plaintiff's Leave to Amend the Complaint (Doc. 73).[1]  For the
reasons discussed below, we will construe Plaintiff's Motion to
Strike his Second Amended Complaint (Doc. 71) as a motion to
withdraw his first Leave to Amend the Complaint (Doc. 67) and grant
the motion.  Further, we deny Plaintiff's second Leave to Amend the
Complaint (Doc. 73) in which he seeks allowance to file a Second
Amended Complaint (Doc. 73-3).

## I. Background

**A.**   ***FACTUAL BACKGROUND***

Plaintiff Charles S. Renchenski ("Plaintiff"), currently
incarcerated at the State Correctional Institution at Coal Township
("SCI-Coal Township"), Coal Township, Pennsylvania, is serving a
life sentence without parole, having been convicted of murder in
1985.  (Doc. 64 at 3-4, 6, Defendant's Supplemental Brief.)  The
official version of the crime for which Plaintiff was convicted
indicates there was a sexual component to the crime, as the victim
and Plaintiff were engaged in a sexual act when the homicide
occurred.  (*Id.*; Doc. 63 ¶ 10, Defendant's Supplemental Statement
of Facts.)  As reported by the Chief Prison Psychologist at SCI-
Coal Township, the record shows that "[d]uring the course of the
sex act, the victim was choked and beaten numerous times about the

---

[1]   The Procedural Background section of this Memorandum
further explains the redundant and somewhat confusing titles
Plaintiff has assigned to various filings.

head, breast and genital area.  In addition the victim's breasts were slashed with a razor blade." (Doc. 63-2 Ex. A ¶ 13, Unsworn Declaration of John Sidler.)

When the underlying circumstances of an inmate's offense contains a sexual component, sex offender treatment programming is automatically made part of the inmate's Correctional Plan.  (Doc. 63 ¶ 9.)  Recommended programming may be a requirement of an inmate's correctional plan, but an inmate's participation in the specific program is voluntary.  (Doc. 64-2 ¶ 6.)

When Plaintiff was first received into the DOC in 1985, his correctional plan noted areas of concern, including sexual.  (Doc. 63-2 ¶ 14.)  The decision to recommend him for sex offender programs was based on the Treatment Team's evaluation of him and the sexual component of his offense.  (*Id.*)

Plaintiff asserts that while he was incarcerated at SCI-Huntingdon (prior to his transfer to SCI-Coal Township), he had succeeded in having the requirement that he participate in sex offender programming removed from his record.  (Doc. 29 at 2 (*citing* Exs. 1-3).)  Plaintiff also maintains that on March 31, 2003, at his first annual review after being transferred to SCI-Coal Township, his counselor (Defendant Williams) decided he needed sex offender treatment therapy.  (Doc. 29 at 2.)

According to the DOC's current Sex Offender Treatment Programming ("SOTP"), assessments of those inmates incarcerated

3

prior to the effective date of the new policy occur at the time the staff is ready to initiate a new sex offenders group.  (Doc. 63-2 at 4.)  Therefore, although Plaintiff's prescriptive plan requires sex offender treatment therapy (which begins with evaluation) Plaintiff has not been evaluated because he has refused to participate in any sex offender treatment programming.  (Doc. 63-2 ¶ 19.)

To date, Plaintiff's refusals to participate in sex offender programming have not affected his parole status because he is serving life without parole, nor has his refusal affected sentence commutation because he has not applied for same.  (*Id.*) Plaintiff's name appears on the institutional sex offender's roster as a possible sex offender because of the sexual component of his offense, but he has not been classified as a sex offender because he has not participated in any sex offender treatment programs. (*Id.*)

## B.   *PROCEDURAL BACKGROUND*

Plaintiff filed this action *pro se* on February 6, 2006, naming Thomas Williams, a prison counselor, Joseph Piazza, prison superintendent, and the Pennsylvania Department of Corrections as defendants.[2]  Defendants filed a motion to dismiss the Complaint on April 14, 2006 (Doc. 16), and a supporting brief on April 28, 2006

---

[2]  Unless otherwise noted, the Procedural Background is derived from the Report and Recommendation (Doc. 51).

4

(Doc. 18).  A brief in opposition to the motion was filed on June 2, 2006 (Doc. 26).  By Order of June 19, 2006, the Court allowed Plaintiff to file an amended complaint.  (Doc. 27.)  Plaintiff filed his Amended Complaint on June 28, 2006.  (Doc. 29.)

In his Amended Complaint, Plaintiff adds five (5) defendants. Three are current or former SCI-Coal Township employees, and the fourth is the Grievance Officer at the Department of Corrections main office in Camp Hill, Pennsylvania.  (Doc. 29 at 1.)  Plaintiff also expands the scope of the Complaint to add a period of time which includes his previous incarceration at SCI-Huntingdon. Plaintiff's basic claim is that he is wrongfully being required to participate in sex offender treatment programming in violation of his constitutional rights and various state and federal laws. (Doc. 29 at 5-6.)  Specifically, Plaintiff alleges his Fifth Amendment rights against self-incrimination are violated because the programming requires admission of guilt for crimes he did not commit that could be used against him in his current state appeal of his criminal conviction.  (*Id.* at 5.)  He also asserts his Sixth Amendment rights have been violated in that the programming requirement in effect adjudicated Plaintiff guilty of a felony crime (of being a sex offender) without a trial by jury.  (*Id.* at 6.)  Plaintiff claims an Eighth Amendment violation based on his assertion that the programming requirement subjected him to cruel and unusual punishment by causing extreme stress and anxiety.

(*Id.*)  Plaintiff also claims violations of the Fourteenth Amendment, both due process and equal protection.  (*Id.*)  Finally, Plaintiff claims violation of various state and federal laws.  (*Id.*)

Plaintiff seeks compensatory, punitive and nominal damages, and an order expunging all records of any sex offender reference, barring retaliation and transfer to another institution as well as barring Defendants from requiring him to participate in sex offender programming.

Defendants filed a motion to dismiss the Amended Complaint on September 14, 2006 (Doc. 39), and a brief in support on September 28, 2006 (Doc. 44).  A brief in opposition to the motion to dismiss was filed on October 23, 2006.  (Doc. 49.)

The Magistrate Judge addressed Defendants' Motion to Dismiss the Amended Complaint in the Report and Recommendation here considered (Doc. 51).  The Report and Recommendation was issued on December 12, 2006.  Plaintiff filed objections on December 29, 2006.  (Doc. 52.)

Defendants filed a brief in opposition to Plaintiff's objections on January 19, 2007.  (Doc. 53.)  Because of errors contained in the brief, the Court directed Defendants to file a corrected brief. (Doc. 54.)  After filing for an extension of time (Doc. 55), Defendants filed their response to Plaintiff's objections on January 31, 2007.  (Doc. 57.)  Plaintiff filed two

reply documents, one on January 31, 2007, (Doc. 57-1) and the other on April 19, 2007, (Doc. 59).

By Order of April 27, 2007, the Court directed Defendants to file a supplemental brief addressing certain specific issues. (Doc. 60.)  After filing a motion for extension of time to file the supplemental brief (Doc. 61), Defendants filed a supplemental statement of facts (Doc. 63) and the required brief (Doc. 64) on May 29, 2007.  Plaintiff filed a reply to Defendants' supplemental brief on June 14, 2007.  (Doc. 66.)

On June 6, 2007, the Court issued an Order notifying the parties of the intent to consider the pending Motion to Dismiss as one for summary judgment and providing them an opportunity to present additional materials.  (Doc. 65.)  This decision was made based upon review of the documents filed up to that point in connection with the pending motion to dismiss and the determination that the Court would consider matters outside the pleadings.  *See Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989).

Following issuance of the notice of conversion Order, Plaintiff filed a document titled "Leave to Amend the Complaint" (Doc. 67), seeking permission to further amend his Amended Complaint (Doc. 29).  Plaintiff's Brief in Support of His Amended Complaint was filed on June 20, 2006.  (Doc. 68.)  In this Amended Complaint, Plaintiff sets out only a claim for libel against prison personnel not previously named.  (Doc. 67-2.)

On June 27, 2007, Plaintiff filed a Motion to Strike Plaintiff's Second Amended Complaint (Doc. 71) wherein Plaintiff asserts he wants to rely on his first Amended Complaint (Doc. 29) because his second Amended Complaint contains only one new claim and he does not wish to waive the claims raised previously.  (*Id.*) Plaintiff also notes his intention to file a properly amended complaint in which all claims are set out.  (*Id.*)

On July 9, 2007, Defendants filed a response to the Court's conversion Order of June 6, 2007, asserting that in light of Plaintiff's intent to rely on his original Amended Complaint and his other recent filings, they would not be submitting any additional material in support of their pending motion and would rely on their previous filings in support of their position that summary judgment should be granted in their favor.  (Doc. 72.)

On July 10, 2007, Plaintiff filed another Leave to Amend the Complaint (Doc. 73) seeking leave to file a "Second Amended Complaint" in which he incorporates the claims of his first Amended Complaint (Doc. 29) and the claim for libel he sought to include in his second Amended Complaint (Doc. 67-2) as well as a claim for slander and an Ex Post Facto Clause claim (Doc. 73-3).

### III. Discussion

For reasons discussed below, we will deny Plaintiff's Leave to Amend the Complaint (Doc. 73) in which he seeks to file a Second Amended Complaint (Doc. 73-3) adding additional defendants and

8

claims based on the Ex Post Facto Clause, libel and slander to his original Amended Complaint (Doc. 29).  With this decision, the substantive issues before the Court are those raised in Plaintiff's objections to the Magistrate Judge's Report and Recommendation. (Doc. 52.)

The issues raised in Plaintiff's objections to the Report and Recommendation are the following: 1) the Magistrate Judge did not address Plaintiff's due process claim (Doc. 52 at 2); 2) the Magistrate Judge failed to address Plaintiff's Fourteenth Amendment Equal Protection claim (*id.* at 4); 3) the Magistrate Judge did not correctly consider Plaintiff's Fifth Amendment self-incrimination claim (*id.* at 5); 4) the Magistrate Judge did not address the issue of Plaintiff being falsely stigmatized as a sex offender when he was never accused, charged or convicted of a sex offense (*id.* at 8); 5) the Magistrate Judge did not address Plaintiff's Sixth Amendment rights (*id.* at 9); 6)the Magistrate Judge did not consider Plaintiff's Eighth Amendment rights against cruel and unusual punishment (*id.* at 10); and 7) the Magistrate Judge did not recognize that Plaintiff is challenging his criminal complaint (*id.* at 11).

When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed.  *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).  When no objections are filed, the district court need only

review a record for clear error.  *See Cruz v. Chater*, 990 F. Supp 375, 377 (M.D. Pa. 1998).  However, when a plaintiff files objections to the magistrate judge's Report and Recommendation, the district judge makes a *de novo* review of the matters to which objection is made.  *See* 28 U.S.C. § 636(b)(1)(C); *Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir.), *cert. denied*, 484 U.S. 976 (1987).

Because Plaintiff has filed objections to the Report and Recommendation, we will make a *de novo* determination regarding the matters to which Plaintiff has objected.  We will otherwise review the record for clear error.  The standard employed in our review will be the standard for summary judgment as we have converted Defendants' Motion to Dismiss the Amended Complaint (Doc. 39) to a motion for summary judgment (*see* Doc. 65).

Having conducted a thorough review of the issues raised in Plaintiff's objections and related filings, for the reasons set out below we conclude Plaintiff has not provided a basis to proceed with this action.  Therefore, summary judgment of this action is appropriate.

A.   ***SUMMARY JUDGMENT STANDARD***

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

10

as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(*citing* Fed. R. Civ. P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Id.* at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988). An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257. In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

**B.   *PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION***

Because Defendants argue and the Magistrate Judge concludes United States Supreme Court precedent regarding Plaintiff's Fifth Amendment self-incrimination claim is controlling of Plaintiff's action, we will first consider his Fifth Amendment claim.

### 1. Fifth Amendment Self-Incrimination Claim

Plaintiff objects to the Report and Recommendation on the basis that the Magistrate Judge did not properly assess his Fifth Amendment self-incrimination claim and, because he has not been convicted of any sex offense and has a pending appeal in state court, required participation in sex offender programming violates his Fifth Amendment right against self-incrimination.   (Doc. 52 at 5-8.)   For the reasons discussed below, we conclude Plaintiff's Fifth Amendment rights have not been violated.

The Fifth Amendment Self-Incrimination Clause which applies to the states through the Fourteenth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  *McKune v. Lile*, 536 U.S. 24, 35 (2002) (citations omitted).   The Court stressed that "complusion" is the central element of the constitutional guarantee which is "only that the witness not be *compelled* to give self-incriminating testimony.  *Id.* at 35-36.   "The privilege does not terminate at the jailhouse door, but the fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis."  *Id.* at 36.

*McKune* considered the compulsion inquiry in the context of prison rehabilitation programs, commenting that "the inquiry must consider the significant restraints already inherent in prison life and the State's own vital interests in rehabilitation goals and procedures within the prison system."  *McKune*, 536 U.S. at 37.   The

12

Court further explained:

> A prison clinical rehabilitation program
> which is acknowledged to bear a rational
> relation to a legitimate penological
> objective, does not violate the privilege
> against self-incrimination if the adverse
> consequences an inmate faces for not
> participating are related to the program
> objectives and do not constitute atypical and
> significant hardships in relation to the
> ordinary incidents of prison life.

*McKune*, 536 U.S. at 37-38.

In *McKune*, the plaintiff was a convicted sex offender for whom prescribed sex offender treatment would require the disclosure of all prior sexual activities, regardless of whether such activities constituted uncharged criminal offenses.  536 U.S. at 29-30. Focusing on the compulsion aspect of the self-incrimination inquiry, the Court found the consequences for the plaintiff's refusal to participate in sex offender treatment - transfer to less desirable prison facilities - did not amount to consequences which would compel a prisoner to reveal information about past crimes despite a desire to remain silent.  *Id.* at 36.

The methodology set out by the Supreme Court to analyze whether prison rehabilitation programs implicate Fifth or Fourteenth Amendment self-incrimination concerns can be broken down into three elements.  If the program and its application to the plaintiff satisfy all three, the Plaintiff has not satisfied the requirements of a violation of the constitutional privilege against self-incrimination.  *McKune*, 536 U.S. at 37-38.  First, the program

must bear a rational relationship to a legitimate penological objective. *Id.* Second, the adverse consequences for not participating must be related to the program objective. *Id.* Third, the adverse consequences do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life. *Id.*

Although the plaintiff in *McKune* was a convicted sex offender and here Plaintiff is not, the Supreme Court's methodology for analyzing a self-incrimination claim is not limited to the facts of the case and is equally applicable here. In this case, Plaintiff was not charged with a sex offense, but prison officials at SCI-Coal Township determined that, based on the nature of his crime, his prescriptive programming would include a requirement that he attend sex offender programming. (Doc. 63-2 Ex. A ¶¶ 10-15, Sidler Affidavit.) As reported by SCI-Coal Township Chief Prison Psychologist John P. Sidler, the record shows that "[d]uring the course of the sex act, the victim was choked and beaten numerous times about the head, breast and genital area. In addition the victim's breasts were slashed with a razor blade." (Doc. 63-2 Ex. A ¶ 13.)

In general terms, it cannot be debated that the sex offender treatment program bears a rational relationship to the legitimate penological objective of assessing and rehabilitating those inmates with convictions of sexual offenses and those inmates whose records

14

indicate a potential problem of a sexual nature.  In specific terms, given the background information on Plaintiff's offense of conviction and the deference due prison officials, we cannot say the sex offender treatment requirement in this case does not bear a rational relationship to a legitimate penological objective.

Turning to the second element of the self-incrimination analysis regarding the relationship of the adverse consequences for not participating to the program objective, here essentially no adverse consequences flow from Plaintiff's refusal to participate in the required programming.  Plaintiff does not specifically identify adverse consequences resulting from non-participation. Rather, he states the following:

> If the plaintiff is not classified or
> registered as the defendants are now claiming
> then there is no need for any sex offender
> programming and no threat of sanctions for
> non participation whatsoever, which obviously
> is not the case as evidenced by the
> defendants stating that non compliance could
> result in sanctions.

(Doc. 66 at 15 (*citing* Doc. 64 at 10).)  Plaintiff citation refers to Defendants' assertion that Plaintiff's "voluntary choice to refuse to participate in this program is of no consequence."  (Doc. 64 at 10.)  Defendants go on to explain Plaintiff's refusals to participate in sex offender programming "have not affected his parole status, as he is serving a life sentence without parole, nor has he sought a sentence commutation."  (*Id.*)  Defendants further assert that, although Plaintiff's name appears on the institutional

15

sex offender's roster as a possible sex offender, he has not been classified as a sex offender because he has refused programming and assessment occurs when an inmate agrees to participate: "If he truly believes that he does not belong in any [sex offender treatment programming], he can simply sign up for the programming and be assessed by the SCI-Coal Township staff."  (Doc. 64 at 10.)

Given these facts, to date the only possible consequence of not participating which could be considered adverse would be the appearance of Plaintiff's name on the institutional sex offender's roster as a possible sex offender.  We conclude this "adverse consequence" would not support a self-incrimination claim pursuant to *McKune* as it is a consequence related to the program objective. 536 U.S. at 37-38.  To identify an inmate with Plaintiff's crime of conviction as a *possible* sex offender on an internal prison roster pending his voluntary assessment can easily be seen as related to the program objective of encouraging participation and assessment. *Id.*

Finally, as to the third *McKune* consideration, we conclude the "adverse consequence" of being identified as a possible sex offender on an internal prison roster does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  *Id.*  Given the sexual component of Plaintiff's crime of conviction, the common routine of inmates being required to attend prescriptive programming, and the

deference due prison officials in the administration of rehabilitation programs which encompasses their ability to consider matters underlying the crime of conviction and any history established in the record, *see*, *e.g.*, *Chambers v. Colorado Dep't of Corrections*, 205 F.3d 1237, 1242 (10th Cir.), *cert. denied*, 531 U.S. 974, 531 U.S. 962 (2000); *see also Jamieson v. Robinson*, 641 F.2d 138, 142 (3d Cir. 1981), Plaintiff's listing as a possible sex offender on the prison roster is not outside the "ordinary incidents of prison life" for an inmate who totally refuses to participate in prescribed programming.

Based on this three-part analysis, the requirement that Plaintiff participate in sex offender programming does not violate the constitutional privilege against self incrimination: here the clinical rehabilitation program bears a rational relation to a legitimate penological objective, the adverse consequences Plaintiff faces for not participating are either non-existent or related to program objectives, and being listed on an internal prison roster as a possible sex offender does constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *See McKune*, 536 U.S. at 37-38. Therefore, Plaintiff's Fifth (Fourteenth) Amendment self-incrimination claim is without merit and cannot provide a basis for

his 42 U.S.C. § 1983 action.[3]

---

[3] We note Plaintiff alleges Defendants' assertions regarding sex offender programming are not believable. (*See* Doc. 66.) Because many of Plaintiff's arguments are not germane to our analysis and the remaining claims are without merit, they warrant only brief discussion.

As to Plaintiff's challenge regarding the "voluntary" nature of sex offender programming and whether he is "required" to attend (*see*, *e.g.*, Doc. 66 at 3, 7), we note a prescriptive recommendation may in fact be a requirement in certain senses and may not be voluntary in the common usage of the word, but these words take on distinct meanings in the context of the constitutional claim at issue here. In the context of a constitutional inquiry regarding whether someone is being compelled to be a witness against himself, participation is "voluntary in the only sense necessary" for the self-incrimination inquiry if an inmate is not "compelled to participate in the [sex offender treatment program]." *McKune*, 536 U.S. at 44. "Whether the inmates are being asked or ordered to participate depends entirely on the consequences of their decision not to do so." *Id.* As discussed in the text, given the current posture of his case and nature of his sentence, Plaintiff does not point to any adverse consequences he has or will suffer related to his decision not to participate in sex offender programming other than being listed on the prison roster as a sex offender.

Plaintiff repeatedly asserts that he is improperly required to participate in sex offender treatment because he is not a convicted sex offender. (*See*, *e.g.*, Doc. 66 at 5.) In the same vein, Plaintiff disputes the underlying sexual component of his crime – the rationale upon which Defendants assert the prescribed participation is appropriate, *see supra* pp. 11-12. In addition to our previous discussion of these contentions in the text, we emphasize our reliance on the general principle that "prison authorities are given wide latitude in determining programs of treatment." *Jamieson*, 641 F.2d at 142. We also find support for our conclusion here in cases recognizing that required participation in corrective programming is included in the discretion given prison administrators, discretion that is not diminished when an inmate maintains he does not need the program prescribed. *Hull v. Gillis*, Civ. A. No. 3:03-CV-1524, 2006 WL 2290412 (M.D. Pa. Aug. 8, 2006); *Garvin v. Terhune*, 157 F. Supp. 2d 416, 418 (D.N.J. Aug. 24, 2001). Further, although Plaintiff disputes the validity of his underlying conviction (*see*, *e.g.*, Doc. 66 at 4) and some of Defendants' assertions regarding the offense of conviction (*see*, *e.g.*, *id.* at 5, 6), he stands convicted of a

### 2. Due Process Claim

Plaintiff argues the Magistrate Judge erred in failing to address his Fourteenth Amendment procedural due process claim. (Doc. 52 at 2.)  The essence of Plaintiff's objection is that procedural due process rights attach when an inmate is forced to undergo involuntary treatment.  (*Id.* at 3 (*citing Washington v. Harper*, 494 U.S. 210 (1980).)

Although we could summarily dispose of this objection because, as discussed above, Plaintiff has presented no evidence that he is being forced to undergo involuntary treatment, Plaintiff's broader discussion in his reply brief (Doc. 66) of a liberty interest as the basis for his Fourteenth Amendment due process claim warrants greater discussion.

A reviewing court analyzes a procedural due process claim in two steps: "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal quotation omitted).  Two situations may give rise to a prisoner liberty interest such that due process is required.  The first is where "the Due Process clause itself confers a liberty interest."  *Sandin v. Conner*, 515

---

crime where the victim died as a result of injuries sustained during the sex act, *see supra* p. 12.

19

U.S. 472, 479 n.4 (1995).  As identified in *Sandin*, the Court found a prisoner had a liberty interest in being free from involuntary transfer to a state mental hospital -  it was "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime, and had 'stigmatizing consequences.'" *Id.* (*quoting Vitek v. Jones*, 445 U.S. 480, 493-94 (1985)).  *Sandin* also recognized an inmate's liberty interest in being free from the involuntary administration of psychotropic drugs announced in *Washington v. Harper*, 494 U.S. 210, 221-22 (1990).  *Sandin*, 515 U.S. at 479 n.4.

In addition to the independent liberty interests, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  *Id.* at 483-84 (citation omitted).  The Court went on to explain

> these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 484.

### a. Liberty Interest Relative to Sex Offender Programming

Whether a prisoner may have a liberty interest in not being labeled a sex offender and/or not being required to participate in sex offender programming has not been decided by the Supreme Court or the Third Circuit Court of Appeals.  Circuits which have

considered the issue have reached different results.

The Ninth Circuit Court of Appeals addressed the issue of whether an inmate had a liberty interest (and attendant procedural due process protections) in not being labeled a sex offender in *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997).  The plaintiff had been charged with robbery, sexual assault, terroristic threatening and attempted murder.  *Neal*, 131 F.3d at 822.  He entered into a plea agreement in exchange for dismissal of the sex offense charges.  *Id.  Neal* held the inmate had a liberty interest and was entitled to the procedural due process protections announced in *Wolff v. McDonnell*, 418 U.S. 539 (1974),[4] providing the following rationale: "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections."  131 F.3d at 830.

The Tenth Circuit Court of Appeals found a liberty interest

---

[4] *Wolff* provides the following minimum procedural protections: 1) written notice of the charge at least twenty-four hours before the hearing; 2) an opportunity to present witnesses and documentary evidence; 3) an impartial tribunal; 4) a written statement by the adjudicatory board describing the evidence relied upon and the reasons for reaching its decision; and 5) if the inmate is illiterate or the issues are so complex that the inmate is unable to effectively defend himself, assistance from another inmate or a member of the prison's staff.  *Wolff*, 418 U.S. at 562-72.

was implicated in a similar situation in *Chambers v. Colorado Dep't of Corrections*, 205 F.3d 1237 (10th Cir. 2000).   The plaintiff was serving a thirty-nine (39) year sentence for aggravated robbery and attempted theft.   *Id*. at 1238.   Two years after the plaintiff began serving the sentence, he was classified as a sex offender with prescribed participation in sex offender group therapy session based on information in his presentence report of a 1983 sexual assault.   *Id.*   His participation was based on an internal Colorado Department of Corrections policy which did not limit classification as a sex offender and required treatment to inmates convicted of sex offenses.   *Id.*   The consequence of failure to participate was a decrease in the amount of good time credit an inmate could earn. The court concluded the plaintiff had a liberty interest in not being labeled a sex offender and was entitled to procedural due process considering the loss of good time credit combined with the label carrying "inchoate stigmatization – here based on bare allegations which are vigorously denied and which have never been tested."   *Chambers*, 205 F.3d at 1242.   The court referenced then-pending "Megan's law" legislation and the requirement that sex offenders register with law enforcement officials.   *Id.* at 1242 n.13.

The Eleventh Circuit Court of Appeals focused primarily on the stigmatizing effect of the sex offender label in *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999) (per curiam).   The

plaintiff was serving a twenty (20) year sentence for attempted murder. *Id.* at 1288.  He was classified as a sex offender based on information in his presentence report that he had two previous sex related charges: a rape charge had been "no billed" by the grand jury, and a sexual abuse charge was *nolle prossed* in the trial court. *Id.*  Although participation in sex offender treatment programs was a prerequisite to parole eligibility and minimum custody classification, the Court concluded the Due Process Clause itself created a liberty interest based on the stigmatizing effect of being classified as a sex offender: "An inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." *Id.* at 1292.  The court analogized the situation to that in *Vitek v. Jones*, 445 U.S. 480 (1995), where the Supreme Court found "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494.

In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004), *cert. denied*, 126 S. Ct. 427, 125 S. Ct. 1934 (2005), the Fifth Circuit Court of Appeals held a plaintiff who was required to register as a sex offender and attend sex offender therapy after being released on mandatory supervision was entitled to procedural due process

protections.   While on parole related to a burglary sentence, the state indicted the plaintiff for aggravated sexual assault of a child and indecency with a child by contact.  *Id.* at 219.  He pleaded guilty and was convicted of misdemeanor assault.  *Id.*  One month after the plaintiff was released on parole for the assault charge, the parole panel imposed additional sex offender conditions noted above.  *Id.*  The plaintiff registered as a sex offender but failed to participate in therapy which resulted in the revocation of his parole.  *Id.*  The court stated that, "due to its highly invasive nature, [the] sex offender therapy program is 'qualitatively different' from other conditions which may attend an inmate's release."  *Coleman*, 395 F.3d at 223 (*citing Morissey v. Brewer*, 408 U.S. 471, 478 (1972) (discussing common parole conditions)).  The court analogized the stigmatizing classification and treatment of the plaintiff with *Vitek*, 445 U.S. at 492, and concluded "the Due Process Clause, as interpreted in *Vitek*, provides [the plaintiff] with a liberty interest in freedom from the stigma and compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions."  *Coleman*, 395 F.3d at 223.

In contrast to the decisions finding a liberty interest relative to sex offender classification and treatment, in *Grennier v. Frank*, 455 F.3d 442 (7th Cir. 2006), the Seventh Circuit Court of

Appeals recognized the circuit court decisions outlined above but concluded a plaintiff who had not been convicted of a sex offense and was required to attend sex offender therapy did not have a protected liberty interest. *Id.* at 445. The plaintiff was serving a life sentence after being convicted of first-degree murder - details of the underlying offense indicate he murdered a teenaged hitchhiker, mutilated her body, and raped her corpse. *Id.* at 444. He sought to be released on parole but every request was denied on two bases: he had not been punished sufficiently, and the populace would not be safe with him at large unless he completed sex offender treatment. *Id.*

The court concluded Wisconsin's parole system regarding offenders serving life sentences did not create a liberty or property interest, and accordingly, the plaintiff had no entitlement to a due process hearing before being labeled a sex offender. *Id.* at 444. The court distinguished the situation from the cases finding a liberty interest attendant to sex offender labeling - concluding in those cases "[i]t was the liberty or property interest stemming from statutes and regulations, and not the 'sex offender' label alone, that required the hearing." *Grennier*, 453 F.3d at 445. *Grennier* looked to the Supreme Court decision in *Paul v. Davis*, 424 U.S. 693 (1976), citing the Court's holding "that the shame and humiliation of being called a criminal is not enough by itself to require a hearing under the due process

clause." *Id.* at 445.   While recognizing that being called a sex offender is more serious than being called a shoplifter, the *Grennier* court concluded this distinction was not dispositive.

> The holding in *Paul* does not depend . . . on the degree to which the defamatory statement causes injury: the line is qualitative rather than quantitative.  The Court held that a particular kind of government act (a public accusation of crime) does not affect a liberty or property interest.  Only when the state goes further and makes a concrete decision that affects liberty or property (such as a rule that shoplifters cannot be public employees, or must spend time in prison) is a hearing essential.

*Id.* (citations omitted).  Grennier held that because the plaintiff did not have a liberty or property interest in the prospect of parole under Wisconsin's system, the state did not need to afford him hearings on any of the subsidiary factual questions.  453 F.3d at 446.

Similarly, the Eighth Circuit Court of Appeals concluded a plaintiff who had been convicted of a non-sexual assault did not have a liberty interest in not being labeled a predatory offender in *Gunderson v. Hvass*, 339 F.3d 639 (8th Cir. 2003).  The court held the plaintiff's claimed loss of reputation was not enough: it must be coupled with some other tangible element to rise to the level of a protectible property interest.  *Id.*

Our review of relevant cases from other circuits indicates the facts here are most analogous to those in *Grennier* where the plaintiff was serving a life sentence and did not have a liberty

interest in the prospect of parole.  *Grennier*, 453 F.3d at 446.

Here Plaintiff is serving life without parole so he has even less

of a basis upon which to claim a liberty interest.  While we agree

with Plaintiff that language in some circuit decisions talks about

the liberty interest attaching to simply being labeled a sex

offender, *see*, *e.g.*, *Kirby*, 195 F.3d at 1292, the finding of a

liberty interest to which due process attached in each case was in

combination with some other tangible deprivation.  Because

Plaintiff currently has no possibility of parole and he identifies

no practical consequences of being classified as a possible sex

offender within the prison other than alleged stigma attached, we

conclude this is a case where Plaintiff does not have a liberty

interest related to the sex offender classification at issue here.

If Plaintiff's situation changes - for example if he becomes

eligible for parole - a different case may be presented, but this

type of speculation is not the province of a § 1983 action.[5]

> **b. *Liberty Interest in Compliance with Prison Policies***

Plaintiff's additional assertion that the failure of prison

---

[5] Although we conclude Plaintiff has not made out a liberty
interest Due Process claim based on his status or program
assignment because of the lack of practical consequences of his
decision not to participate in sex offender programming, we note
that, given the shifting and somewhat conflicting legal landscape
on this issue discussed in the text, prison administrators' review
of the process attached to certain prescriptive requirements may be
advisable.  A cognizance of the *Wolff* due process protections and a
proactive approach to the potential of altered legal requirements
or changed factual circumstances only serve to avoid unnecessary
litigation.

authorities to follow their own rules is a violation of his
Fourteenth Amendment Due Process rights (Doc. 66 at 12-14) is
without merit.  It is widely recognized that it is the federal
standards of due process and not the procedural scheme set out in
prison directives, guidelines or programs that give rise to a
procedural due process claim.  *See*, *e.g.*, *Drayton v. Robinson*, 719
F.2d 1214, 1218-19 (3d Cir. 1983).  In *Sandin*, the Supreme Court
stressed that it is the nature of the deprivation, not the language
of a particular regulation, that gives rise to a liberty interest –
mandatory language in prisoner regulations do not confer rights of
constitutional proportion on inmates absent the due process
principles outlined above, *see supra* p. 616.  *Sandin*, 515 U.S. at
481-84.  Although a state law or prison directive may give rise to
a state law liberty interest, and Fourteenth Amendment due process
protections attach to a state law liberty interest, *see*, *e.g.*,
*Grandison v. Cuyler*, 774 F.2d 598, 602 (3d Cir. 1985), here
Plaintiff identifies no such interest.  Therefore, Plaintiff's
argument that prison rules here give rise to a Due Process claim is
without merit.

### 3. Equal Protection Claim

Plaintiff objects to the Report and Recommendation on the
basis that the Magistrate Judge did not address his equal
protection claim.  (Doc. 52 at 14.)

To state a claim under the Equal Protection Clause a plaintiff

28

"must allege that he has been treated differently because of his
membership in a suspect class or his exercise of a fundamental
right, or that he has been treated differently from similarly-
situated others and that this differential treatment was not
rationally related to a legitimate state interest."
*Young v. New Sewickley Twp.*, 160 Fed. Appx. 263, 266 (3d Cir. 2005
(not precedential) (*citing City of Cleburne v. Cleburne Living
Ctr.*, 473 U.S. 432 (1985)).  "A prisoner's vague and conclusory
allegations that his equal protection rights have been violated are
insufficient to raise an equal protection claim."  *Pedraza v.
Meyer*, 919 F.2d 318, 319 n.1 (5th Cir. 1990).

Plaintiff's Equal Protection claim as set out in his Amended
Complaint can only be described as a vague and conclusory
allegation.  (Doc. 29 at 6.)  A review of his subsequent filings
reveals that Plaintiff has failed to provide a substantive basis
for this claim.  Although he refers to a violation of 42 Pa. C.S.A.
§ 9795.4, a failure to adhere to prison policies and guidelines
relating to this statutory section, and violation of "Ex Post Facto
laws" (Doc. 52 at 5) as bases for his equal protection claim,
Plaintiff does not provide any information relating to the
requirements of an Equal Protection violation.[6]  Therefore,

---

[6] Plaintiff's referral to 42 Pa. C.S.A. § 9795.4 and related
guidelines and policies is not germane to this action as the cited
statutory section deals with the registration of sexual offenders

Plaintiff's equal protection claim cannot provide a basis for his § 1983 action and is properly dismissed.

### 4. *Sex Offender Stigma*

Plaintiff's next objection is that the Magistrate Judge did not address his claim relating to being stigmatized by being labeled a sex offender.  (Doc. 52 at 9.)  The constitutional implications of the sex offender label in Plaintiff's case have been thoroughly addressed in our procedural due process discussion.

### 5. *Sixth Amendment Claim*

Plaintiff's claim that the Magistrate Judge erred when he did not address Plaintiff's Sixth Amendment rights relates to the assertion that the Pennsylvania Supreme Court defines "assessment" as a criminal proceeding pursuant to "§ 9791 et seq."  (Doc. 52 at 9.)  Plaintiff also cites the procedure outlined in 42 Pa. C.S.A. § 9795.4 as requirements in his case.

As noted above in the context of Plaintiff's Equal Protection claim, *see supra* n.6, the cited provisions refer to assessment and registration of an individual as a sexually violent predator.  Such assessment and registration is not at issue here.  Therefore, Plaintiff cannot sustain his Sixth Amendment claim on the asserted basis.

---

and an assessment as to whether an individual should be classified as a sexually violent predator.  *See* 42 Pa. C.S.A. §§ 9795.1, 9795.4.  Nothing in this case implicates such a designation or assessment.

### 6. Eighth Amendment Claim

Plaintiff claims the Magistrate Judge erred in failing to consider Plaintiff's Eighth Amendment Claim in which he asserted that requiring sex offender programming amounted to cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment "prohibits the wanton and unnecessary infliction of pain upon persons in custody." *Rhodes v. Robinson*, 612 F.2d 766, 771 (3d Cir. 1979) (*citing Estelle v. Gamble*, 429 U.S. 97 (1976)).  The Third Circuit Court of Appeals recognizes that emotional injury may give rise to an Eighth Amendment claim. *See Rhodes*, 612 F.2d at 772; *see also White v. Napolean*, 897 F.2d 103, 111 (3d Cir. 1990); *Metzger v. Osbeck*, 841 F.2d 518, 522-23 (3d Cir. 1988).  To show an Eighth Amendment violation, a plaintiff must establish that the named government actor was aware that a substantial risk of serious harm existed and deliberately disregarded that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The Circuit Court has explained that the critical element is not the nature of the plaintiff's injury but the manner in which it is afflicted.  *See*, *e.g.*, *Rhodes*, 612 F.2d at 772.  Consistent with this principle, "where a person suffers injury as an incidental and unintended consequence of official actions, the abuse of power contemplated in the . . . eighth amendment cases does not arise." *Id.*

Considering all of Plaintiff's filings, we find no allegations

which would give rise to an Eighth Amendment claim.  Here
Plaintiff's alleged emotional suffering is related to the
requirement in his prescriptive plan that he attend sex offender
programming.  The record does not support Plaintiff's assertions
that guilt has been adjudicated by prison officials, that he has
been labeled a sex offender or that sanctions have been mandated.
As discussed above, Plaintiff has not pointed to any sanction he
has suffered as a result of sex offender programming being part of
his prescriptive plan or his refusal to participate in such
programming.  Given the background of Plaintiff's offense of
conviction, SCI-Coal Township prison officials' determination that
sex offender programming (beginning with assessment) should be part
of Plaintiff's prescriptive plan cannot be considered an abuse of
power or an awareness that a substantial risk of serious harm
existed.  Therefore, Plaintiff's Eighth Amendment claim is subject
to dismissal.

### 7. *Plaintiff's Challenge to the Underlying Conviction*

Plaintiff alleges the Magistrate Judge erred in failing to
acknowledge he is challenging the underlying conviction.  (Doc. 52
at 11.)  He avers that the information upon which prison officials
relied in requiring sex offender programming is faulty and cannot
be trusted for accuracy.  (*Id.* at 11-12.)

We conclude this objection is without merit.  Plaintiff's mere
assertion that relied-upon facts are faulty does not undermine

32

prison officials's reliance on them: as long as Plaintiff's conviction stands, prison officials are entitled to consider information related to his arrest and conviction.

## C. *PLAINTIFF'S LEAVE TO AMEND*

In Plaintiff's Leave to Amend the Complaint (Doc. 73), he seeks to file a Second Amended Complaint (Doc. 73-3) adding additional defendants and claims based on the Ex Post Facto Clause, libel and slander to his original Amended Complaint (Doc. 29). For reasons discussed below, we deny this motion.

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits in the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave should, as the rules require, be 'freely given.'

*Id.; see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03 (3d Cir. 2006). The Court further explained that it is within the discretion of the district court to grant or deny the opportunity to amend, but the district court should explain a decision to refuse the amendment. *Id.* An amendment would be futile where the

proposed amended complaint would not withstand a renewed motion to dismiss for failure to state a claim upon which relief may be granted. *In re NAHC, Inc. Securities Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citation omitted); *Hollis-Arrington v. PHH Mortg. Corp.*, 205 Fed Appx. 48, 55 (3d Cir. 2006) (not precedential).

### 1. Ex Post Facto Claim

Plaintiff's Ex Post Facto Clause claim does not present a basis to amend his complaint because it is not a claim upon which relief could be granted. In *Neal* and *Chambers*, the courts addressed Ex Post Facto claims where the inmate had not been convicted of a sex offense and was labeled a sex offender and required to participate in sex offender therapy based on laws, regulations or policies which became effective after the plaintiff was incarcerated. Both courts recognized the required two-pronged inquiry: first, the law must apply to events occurring before its enactment; and second, it must disadvantage the individual. *Chambers*, 205 F.3d at 1241; *Neal*, 131 F.3d at 825; *see also Richardson v. Pennsylvania Bd. of Probation and Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005) (citation omitted). Concerning disadvantage, the court looks at whether the law has retroactively altered the definition of criminal conduct or increased punishment for the crime. *Chambers*, 204 F.3d at 1242 (*citing Lynce v. Mathis*, 519 U.S. 433 (1997)); *Neal*, 131 f.3d at 825 (*citing California Dep't of Corrections v. Morales*, 514 U.S. 499, 504 (1995)). "A

34

speculated or attenuated possibility of increasing the measure of punishment is not enough." *Richardson*, 423 F.3d at 288 (citation omitted).

In *Neal*, the court considered the practical consequences attached to the sex offender label - loss of eligibility for furlough or favorable housing, and completion of SOTP as a precondition to parole eligibility - and concluded these were not disadvantages which give rise to an Ex Post Facto claim. 131 F.3d at 826. The court relied on *Kansas v. Hendricks*, 521 U.S. 346 (1997), where the Supreme Court held that a law which allowed for the involuntary commitment of an inmate deemed a sexually violent predator past the time to which the inmate had been sentenced did not violate the Ex Post Facto Clause. *Id.* at 826-27. The act in question did not require a criminal conviction as a prerequisite for involuntary commitment, a fact which led the Court to conclude "[a]n absence of the necessary criminal responsibility suggests that the State is not seeking retribution for a past misdeed." *Hendricks*, 521 U.S. at 362. The Court further concluded that because the "Act does not impose punishment, it does not raise ex post facto concerns." *Id.* at 371. Following the analysis of *Hendricks*, *Neal* reasoned "[b]ecause the Supreme Court has held that such mandatory treatment programs [as SOTP] following an inmate's classification as a sex offender based on conduct which occurred prior to the programs' beginning do not violate the Ex Post Facto

Clause, summary judgment for the defendants on the inmates' ex post factor clause was appropriate." *Neal*, 131 F.3d at 827.

As discussed above, here the practical consequences of the provisions under which prison officials seek to have Plaintiff participate in SOTP are less than those in *Neal*. Plaintiff's claim would fail the second prong of the Ex Post Facto inquiry as the plaintiff in *Neal* was more disadvantaged than Plaintiff here. Keeping in mind we are not to consider any speculative or attenuated consequences Plaintiff might assert relative to required SOTP participation - e.g., future impact on Plaintiff's ongoing challenge to his conviction (Doc. 52 at 8; Doc. 66 at 16) - there is no basis upon which to conclude he could succeed on this amendment to his Complaint.

*Chambers* approached the Ex Post Facto claim from a different perspective. The court first noted the plaintiff's punishment was not increased because he possessed no vested interest in a particular parole date or parole hearing eligibility date and the SOTP did not criminalize conduct that was legal before its passage. 205 F.3d at 1242. *Chambers* further noted "in rehabilitative matters, prison officials may consider any history established in the inmate's record which it may determine requires treatment." *Id.* Thus, "because application of the SOTP did not affect the legal consequences of his crime or increase his punishment, there is no *ex post facto* violation." *Id.* (internal quotation omitted).

36

Here Plaintiff's record contained information about his underlying conviction which led prison officials to determine he may require sex offender treatment. Plaintiff's punishment has not been increased and the legal consequences of his crime have not been affected in any way which would distinguish his case from *Chambers* or *Neal*. Therefore, further amendment of his Amended Complaint (Doc. 29) to include an Ex Post Facto claim would not present a claim upon which relief could be granted, thus rendering any such amendment futile.

### 2. Libel and Slander Claims

Plaintiff also seeks to file a Second Amended Complaint on the basis of alleged libel and slander on the part of prison officials. (Doc. 73.) The basis of this proposed amendment is a notation on a document submitted by Defendants in support of their motion. (Doc. 63-2 Ex. A-6 p. 2.) The document is a letter from Plaintiff to "Mr. Stevens" dated June 17, 2005, in which he explains that he is not a "denier" for purposes of sex offender treatment; rather, he is innocent as he has never been accused of any sex charge and should not be required to attend the treatment program. (*Id.*) The following notation is found at the bottom of the correspondence: "Murder, rape, bite on nipple cut off to disguise irregular tooth pattern. as per Williams CCII 06/20/05." (*Id.*) It is the rape notation to which Plaintiff vigorously objects. (Doc. 74 at 4.)

Looking at Plaintiff's claim from a federal law perspective,

some courts have recognized a federal cause of action in a due process expungement claim where a prisoner seeks to have allegedly false information removed from his record.   *See Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979).   Although the ongoing validity of *Paine* has been questioned, *see Johnson v. Rodriguez*, 110 F.3d 299, 309 n.13, 5th Cir. 1997), the Third Circuit Court of Appeals recently reviewed such a claim in *Reynolds v. Williamson*, 197 Fed. Appx. 196, 199 (3d Cir. 2006) (not precedential).   *Reynolds* recognized that *Paine* held "a state prisoner has a federal due process right to have 'prejudicial erroneous information expunged from [his] prison files' where he shows that: (1) the information is in his file, (2) the information is false, and (3) the information is relied upon to a constitutionally significant degree." *Reynolds*, 197 Fed. Appx. at 199 (*quoting Paine*, 595 F.2d at 201-02).   *Reynolds* noted the Third Circuit has not decided whether to endorse the right of expungement announced in *Paine* and denied the plaintiff's claim on the *arguendo* assumption that such a right exists.   *Id.*

Here any federal claim based upon the information identified by Plaintiff - the notation concerning rape - would fail on the third *Paine* requirement.   First, Plaintiff has not shown any reliance on the notation cited.   Moreover, as discussed above, Plaintiff has shown no constitutional deprivation based upon being labeled a sex offender within the prison or being required to

attend SOTP.  Therefore, any information in his file that may have contributed to the decision to so label Plaintiff or require SOTP cannot have been relied on to a constitutionally significant degree.  Based on this analysis, even if the Third Circuit were to recognize the right announced in *Paine*, Plaintiff has failed to state a claim upon which relief could be granted.  As discussed above, it would be futile to allow an amendment of the complaint to include a meritless claim.

Finally, to the extent Plaintiff is proposing amendment based on state law claims for libel and slander, the Court chooses not to exercise supplemental jurisdiction.  It is proper to decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because we find no merit in Plaintiff's federal claims – the claims over which we have original jurisdiction – we will not allow amendment of Plaintiff's Complaint to include state law claims.

### III. Conclusion

For the reasons discussed above, we deny Plaintiff's Leave to Amend the Complaint (Doc. 73).  Therefore, our consideration of whether summary judgment is proper is focused on Plaintiff's Amended Complaint (Doc. 29) – the subject of the Magistrate Judge's Report and Recommendation (Doc. 51) and the bulk of the filings in this case.

Based on the foregoing discussion, Plaintiff's objections to the Report and Recommendation (Doc. 52) provide no basis upon which to proceed with his 42 U.S.C. § 1983 action.  Therefore, summary judgment in favor of Defendants on Plaintiff's claims brought pursuant to this cause of action is appropriate.  As Plaintiff has not come forward with any other viable cause of action in his Amended Complaint (Doc. 29), dismissal of this complaint is warranted.  With this conclusion, we adopt the Magistrate Judge's Report and Recommendation (Doc. 51) as modified.  Defendant's Motion to Dismiss the Amended Complaint (Doc. 39), converted to a motion for summary judgment pursuant to the Court's Order of June 6, 2007, (Doc. 65) is granted.

We construe Plaintiff's Motion to Strike his Second Amended Complaint (Doc. 71) as a motion to withdraw his request for Leave to Amend the Complaint (Doc. 67) and grant the motion.  (*See supra* n.1.)  Therefore, Plaintiff's Leave to Amend the Complaint (Doc. 67) is deemed withdrawn.

An appropriate Order follows.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: July 26, 2007

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES S. RENCHENSKI,          :
                                :
          Plaintiff,            :CIVIL ACTION NO. 3:06-CV-278
                                :
          v.                    :(JUDGE CONABOY)
                                :(Magistrate Judge Smyser)
THOMAS WILLIAMS, et al.,        :
                                :
          Defendants.           :
_____

**ORDER**

AND NOW, THIS 26th DAY OF JULY 2007, FOR THE REASONS DISCUSSED IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Leave to Amend the Complaint (Doc. 73) is DENIED;

2. The Magistrate Judge's Report and Recommendation (Doc. 51) is adopted as modified;

3. Defendant's Motion to Dismiss the Amended Complaint (Doc. 39), converted to a motion for summary judgment pursuant to the Court's Order of June 6, 2007, (Doc. 65) is GRANTED;

4. Plaintiff's Motion to Strike his Second Amended Complaint (Doc. 71) is construed as a motion to withdraw his request for Leave to Amend the Complaint (Doc. 67) and is GRANTED;

5. Plaintiff's Leave to Amend the Complaint (Doc. 67) is DEEMED WITHDRAWN;

6. The Clerk of Court is directed to close this case.


                         S/Richard P. Conaboy
                         RICHARD P. CONABOY
                         United States District Judge

41