UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES S. RENCHENSKI,           :
                                 :
          Plaintiff,             :CIVIL ACTION NO. 3:06-CV-278
                                 :
          v.                     :(JUDGE CONABOY)
                                 :(Magistrate Judge Smyser)
THOMAS WILLIAMS, et al.,         :
                                 :
          Defendants.            :

---

**MEMORANDUM**

Here we consider Magistrate Judge J. Andrew Smyser's June 21, 2001, Report and Recommendation (Doc. 139) concerning Defendants' Motion for Summary Judgement (Doc. 134).  Finding Defendants are entitled to qualified immunity, Magistrate Judge Smyser recommends that the Court grant Defendants' motion and close this case.  (Doc. 139 at 16.)  Plaintiff timely filed Objections to Magistrate's Report and Recommendation (Doc. 141) on July 2, 2012, and Defendants filed Defendants' Brief in Opposition to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. 144) on August 1, 2012.  Plaintiff did not file a reply and the time for doing so has passed.  Therefore, this matter is ripe for disposition.  For the reasons discussed below, we adopt the Report and Recommendation (Doc. 139) as modified and grant Defendant's Motion for Summary Judgment (Doc. 134).

## I. Background

### B.    Statement of Facts

With their summary judgment motion, Defendants filed
Defendants' Statement of Undisputed Facts (Doc. 135).  Plaintiff
did not file a document responding to each of Defendants' numbered
paragraphs as required by Local Rule 56.1 of the Local Rule of
Court of the Middle District of Pennsylvania.  However, in his
"Brief in Opposition to Defendant's [sic] Statement of Undisputed
Facts and Consolidated Brief in Opposition to Summary Judgment"
(Doc. 137), Plaintiff noted opposition to several "undisputed
material facts" set out by Defendants in their Statement of
Undisputed Facts (Doc. 135).  In the factual recitation set out
below, we will note the parties' disagreements.

At all relevant times, Plaintiff was incarcerated at the State
Correctional Institution at Coal Township ("SCI-Coal Township").
(Doc. 135 ¶ 1.)  Defendants are SCI-Coal Township Superintendent
Joseph Piazza, former Superintendent Frank Gillis, Grievance
Officer Kandis Descani, Counselor Thomas Williams, Unit Manager
Larry Kaskie, Psychologist John Sidler, Chief Grievance Officer
Sharon Burks, and the Pennsylvania Department of Corrections
(hereinafter "DOC officials").  (Doc. 135 ¶ 2.)

On January 30, 1985, Plaintiff was sentenced to life without
the possibility of parole following his conviction for first degree
murder.  (Doc. 135 ¶ 3.)  The official version of the crime

2

indicates Plaintiff was engaged in a sexual act with the victim when the homicide occurred.  (Doc. 135 ¶ 10.)  During the course of the sex act, the victim was choked and beaten numerous times about the head, breast and genital area, and the victim's breast and nipple were slashed with a razor blade.  (*Id.*)

Upon incarceration, Correctional Plans are developed for inmates based upon their initial classification and summary evaluations, including psychological and educational assessments as well as consideration of the nature and underlying circumstances of the offense for which the inmate is incarcerated.  (Doc. 135 ¶ 4.) A Correctional Plan is developed for every inmate by the DOC Treatment team which includes recommended programming based upon the inmates individual rehabilitative needs.  (*Id.*)

Defendants characterize an inmate's participation in the specific program as voluntary.  (Doc. 135 ¶ 5.)  However, both Plaintiff and the Third Circuit Court of Appeals disagree (Doc. 137 ¶ 1 (citing 622 F.3d at 322, 330).)

Before 1999, no standardized sex offender treatment program was used by the Pennsylvania Department of Corrections ("DOC") for inmates who were sex offenders, had a history of sex offenses, or offenses that had a sexual component.  (Doc. 135 ¶ 6.)  In November 1999, the DOC instituted the Sex Offenders Treatment Program ("SOTP").  (Doc. 135 ¶ 7.)  Defendants aver that all inmates serving prison terms related to sex offenses and inmates who had a

prior history of sexual offenses or the nature of underlying circumstances of their offense contained a sexual component were prescribed sex offender programming as part of the SOTP.  In response, Plaintiff notes the following: the record clearly indicates he was not serving time related to a sex offense nor did he have a prior history of sex offenses; and, as found by the Third Circuit, no "sexual component" of his offense listed by Defendants is relevant to sex offender treatment and classification.  (Doc. 137 ¶ 2.)

At the time of Plaintiff's reception into the DOC in 1985, no standardized SOTP was in place.  (Doc. 135 ¶ 11.)  However, his Correctional Plan or Prescriptive Program noted areas of concern as drug and alcohol, assault and sexual.  (*Id.*)  The decision to recommend Plaintiff for sex offender programs was based upon the Treatment team's evaluation of him coupled with the sexual nature of his offense.  (Doc. 135 ¶ 12.)  At the time his programming was designated, it was in accordance with DOC policies and law.  (*Id.*)

In June 2005, Plaintiff was notified about participation in a SOTP and he refused, stating that he was never charged with or convicted of a sex offense.  (Doc. 135 ¶ 13.)  In October 2005, he was informed he was recommended for SOTP because the official version of his crime indicates a sexual component as he was engaged in a sexual act with the victim when the homicide occurred.  (Doc. 135 ¶ 14.)  Defendants aver Plaintiff was further informed that his

4

counselor made a recommendation to the Psychology Department that Plaintiff be assessed to determine whether or not he needed Sex Offender programming based on the nature of the events surrounding his crime.  (Doc. 135 ¶ 15.)  Plaintiff disputes Defendants' statement, asserting that Defendants attempt to make it appear that Counselor Williams was acting in accord with DOC policies but this assertion is refuted by the record and the Third Circuit's decision.  (Doc. 137 ¶ 3.)  Plaintiff maintains that Williams mandated programming without any type of assessment or involvement of any staff members and other staff members did not get involved until Plaintiff complained about Williams' actions.  (*Id.*)

Plaintiff's refusal to participate in the SOTP assessment did not affect his parole status because he is serving a sentence of life without parole.  (Doc. 135 ¶ 16.)  Defendants maintain that, although Plaintiff's name appeared on the institutional sex offender's roster as a possible sex offender, he was not classified as a sex offender.  (*Id.*)  Plaintiff takes issue with this assessment of his classification, citing the Third Circuit's opinion that Defendant's characterization contradicts DOC's own policy which provides that "'every inmate who refuses assessment and/or treatment shall be identified as falling in the Moderate/High risk category [of sex offender].'" (Doc. 137 ¶ 4 (citing *Renchenski*, 622 F.3d at 322).)

Currently, Plaintiff is no longer recommended for SOTP assessment.  (Doc. 135 ¶ 25.)

**B.    *Procedural Background***

Plaintiff filed the above-captioned case on February 6, 2006, claiming harm related to prison sex offender status designation and treatment programming.  (Doc. 1.)  Plaintiff filed an Amended Complaint on June 28, 2006, in which he raised claims against various state actors and agencies under the Fifth Amendment, Sixth Amendment, Eighth Amendment, Fourteenth Amendment Due Process Clause and Equal Protections Clause, and "various State and Federal laws."  (Doc. 29 at 5-6.)

Defendants filed Defendants' Motion to Dismiss the Amended Complaint on September 14, 2006.  (Doc. 39.)  Magistrate Judge J. Andrew Smyser recommended the Court grant the motion and dismiss the case with his Report and Recommendation of December 12, 2006. (Doc. 51.)  After the filing of numerous documents and several extensions of time (*see* Docs. 52-74), the Court (having converted the motion to dismiss to one for summary judgment as noticed to the parties by Order of June 6, 2007 (Doc. 65)) issued a Memorandum and Order on July 26, 2007, adopting the Report and Recommendation as modified and granting summary judgment on all claims in Defendants' favor.  (Doc. 75.)

Plaintiff appealed this decision.  (Doc. 76.)  In an Opinion filed on October 4, 2010, the Third Circuit Court of Appeals

affirmed this Court's decision as to all claims except Plaintiff's
Fourteenth Amendment Procedural Due Process Clause claim.
*Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010).  The Court
agreed with the Eleventh and Fifth Circuits that labeling a
prisoner a sex offender and forcing him or her to submit to
intensive therapy "triggers an independent liberty interest
emanating from the Due Process Clause of the Fourteenth Amendment,"
622 F.3d at 327, and, therefore, Plaintiff was entitled to adequate
process before being labeled a sex offender and being required to
attend sex offender therapy, *id.* at 331.  The Circuit Court also
identified what would constitute adequate procedure in Renchenski's
situation.  622 F.3d at 331-32.

Defendants filed a Petition for Writ of Certiorari to the
United States Supreme Court which was denied on April 18, 2011.
*Williams v. Renchenski*, 131 S. Ct. 2100 (2011).

After the denial of Certiorari, the DOC no longer recommended
SOTP assessment based on Plaintiff's "life sentence, his conviction
date and recommended programming."  (Doc. 136 ¶ 25.)

Upon remand for consideration of Plaintiff's Fourteenth
Amendment procedural due process claim, the Court referred the case
to Magistrate Judge Smyser.  (Doc. 110.)  Included in the parties'
filings was Defendants' Motion for Summary Judgment (Doc. 134)
filed on March 20, 2012, in which they argue in their supporting
brief (Doc. 136) that judgement should be granted in their favor on

the only remaining issue (liability and damages on the Fourteenth
Amendment procedural due process claim) because they are entitled
to qualified immunity on this claim.  This motion is the subject of
the Report and Recommendation (Doc. 139) under consideration here.

As noted above, Magistrate Judge Smyser recommends granting
Defendants' motion (Doc. 139) and Plaintiff objects to this
recommendation (Doc. 141).  Plaintiff has not replied to
Defendants' brief in opposition to Plaintiff's objections (Doc.
144) and the time for doing so has passed.  Therefore, this matter
is ripe for disposition.

## II. Discussion

***A.   Standards of Review***

**1.   Report and Recommendation**

When a plaintiff files objections to a magistrate judge's
report, the reviewing court conducts a *de novo* review of those
portions of the report to which objection is made.  28 U.S.C. §
636(b)(1).  To warrant *de novo* review, the objections must be both
timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir.
1984).  The court may accept, reject or modify, in whole or in
part, the findings made by the magistrate judge.  28 U.S.C. §
636(b)(1).  Uncontested portions of the report are reviewed for
clear error.  *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa.
1998).

8

2. **Summary Judgement**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted).  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof."

*Id.* at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Id.* at 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the plaintiff.  *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 267 (3d Cir. 2001) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 854 N.1 (3d Cir. 1990).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**B.   *Plaintiff's Objections***

**1.   Disputed Material Facts**

Plaintiff maintains the Magistrate Judge erred in finding summary judgement appropriate because disputed material facts exist.  (Doc. 141 at 1-5.)  We disagree.

In this section of his brief, Plaintiff takes issue with several facts set out by Magistrate Judge Smyser.  (Doc. 141 at 1-5.)  Plaintiff specifically contends the facts relied upon by the

10

Magistrate Judge and Defendants "would have the court believe that the defendant's [sic] followed proper procedures and did not act outside of those parameters when dealing with Mr. Renchenski." (Doc. 141 at 2.)

In the factual recitation set out above, we have noted the discrepancies identified by Plaintiff in his opposition to Defendants' motion. (*See* Doc. 137 at 1-3.)  Therefore, to the extent the Magistrate Judge did not do so, we have addressed Plaintiff's objection.

We further note our conclusion does not rely upon any of the disputed facts identified.[1]  For purposes of this motion, where underlying facts are in dispute, we view the facts in the light most favorable to Plaintiff.  *See Abramson*, 260 F.3d at 267.  This includes assuming that Defendants did not follow DOC procedures in dealing with Plaintiff's sex offender assessment and related matters.  However, contrary to Plaintiff's assertion, this assumption does not defeat Defendants' claim that they are entitled to summary judgement on the basis of qualified immunity because, as discussed in detail in the next section of this Memorandum, Plaintiff's reliance upon violation of administrative policy as a

---

[1]  Some "facts" identified by Plaintiff are legal rather than factual considerations.  For example, Plaintiff states "[i]t is a disputed fact whether or not a 'firmly established' due process violation occurred in this case.  That is also a jury's determination and not a court sitting in summary judgment."  (Doc. 141 at 3.)

foundation for his due process claim (*see* Doc. 141 at 3-4) is without merit.

## 2.  **Qualified Immunity**

Plaintiff objects to the Magistrate Judge's determination that Defendants are entitled to qualified immunity on his Fourteenth Amendment procedural due process claim based on his assertion that his right to due process in this case was clearly established. (Doc. 141 at 7.)  We disagree.

The United States Supreme Court recently stated that "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, ---U.S.---, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court also noted it had recently reaffirmed that lower courts have discretion to decide which of the two prongs of qualified immunity analysis to tackle first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  The primary purpose of qualified immunity is to protect public officials "'from undue interference with their duties and from potentially disabling threats of liability.'" *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006) (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)).

A right is clearly established for purposes of qualified

immunity "when its contours are 'sufficiently clear that a
reasonable official would understand that what he is doing violated
that right.'" *Williams*, 455 F.3d at 191 (quoting *Anderson v.
Creighton*, 483 U.S. 635, 640 (1987)).  *Williams* further explained
that

> [t]o find that a right is clearly
> established, "the right allegedly violated
> must be defined at the appropriate level of
> specificity." *Wilson v. Layne*, 526 U.S. 603,
> 615 (1999).  As the Supreme Court explained
> in *Hope v. Pelzer*, in some cases "a general
> constitutional rule already identified in the
> decisional law may apply with obvious clarity
> to the specific conduct in question, even
> though the very action in question has [not]
> previously been held unlawful."  536 U.S.
> 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666
> (2002) (quoting *United States v. Lanier*, 520
> U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d
> 432 (1997) (internal quotation marks and
> citation omitted)).  Indeed, "officials can
> still be on notice that their conduct
> violates established law even in novel
> factual circumstances."  *Id.*

*Williams*, 455 F.3d at 191.  In *Hope*, the Court stated that in
*Lanier* it had expressly rejected a requirement that previous cases
be "fundamentally similar," noting that "the salient question the
[court] should have asked is whether the state of the law [at the
relevant time] gave [the defendant] fair warning that [the
plaintiff's] treatment was unconstitutional."  536 U.S. at 741.

Here the Third Circuit Court of Appeals held that Plaintiff
had a "Fourteenth Amendment due process liberty interest in not
being labeled a sex offender and forced into treatment."  622 F.3d

13

at 331.   The Circuit Court further determined that, based on this right, Plaintiff was entitled "to adequate process before Defendants can take this action."   *Id.*   Thus, under the first prong of the qualified immunity analysis, there is no question that Defendants violated a constitutional right.

However, under the second prong, the Third Circuit's decisions in *Renchenski* and *Warner v. McVey*, 429 F. App'x 176 (3d Cir. 2011) (not precedential), indicate the right violated was not clearly established at the time of the challenged conduct.   *Warner* considered the question of whether the defendants were entitled to qualified immunity on the probationer's claim that his right to procedural due process was violated when the state parole board designated him a sex offender and instructed him to attend sex offender treatment.   429 F. App'x at 177-78.   Identifying its holding in *Renchenski* as "only after a prisoner has been afforded due process may sex offender conditions be imposed on an inmate who has not been convicted of a sexual offense," 429 F. App'x at 178, the Circuit Court agreed with the defendants that they were entitled to qualified immunity because, assuming the right applied to the probationer plaintiff, the right was not clearly established when the designation was applied to the plaintiff in *Warner* before *Renchenski* was decided.   *Id.* at 178.   Thus, by the Third Circuit Court's own assessment, the right identified by Plaintiff was not clearly established in this circuit before the Circuit Court

decided *Renchenski v. Williams*.   In other words, the unlawfulness
of Defendants' conduct would not have been apparent to a reasonable
official (within the Third Circuit) based on the state of the law
when the actions at issue occurred.   See, *e.g.*, *Brown v. Muhlenberg
Twp.*, 269 F.3d 205, 211-12 (3d Cir. 2001).

Plaintiff's attempts to show otherwise are unavailing.   As
noted in the previous section of the Memorandum, Plaintiff's
assertion that violation of administrative policy is a violation of
due process and precludes qualified immunity is without merit.
Plaintiff's reliance on *Davis v. Scherer*, 104 S. Ct. 3012, 468 U.S.
183 (1984), is misguided in that *Davis* did not hold that "even
though [the plaintiff's] due process rights were not 'firmly
established' at the time . . . [the defendants] had not followed
administrative regulations" and thereby forfeited their qualified
immunity from suit under § 1983.   (Doc. 141 at 4 (citing *Davis*, 104
S. Ct at 3014).)   This was the reasoning articulated by the
Eleventh Circuit Court of Appeals which the United States Supreme
Court rejected.   468 U.S. at 183, 104 S. Ct. at 3014.   In *Davis*,
the Court clearly concluded that "[o]fficials sued for
constitutional violations do not lose their qualified immunity
merely because their conduct violates some statutory or
administrative provision."   468 U.S. at 194.   The Court held "[a]
plaintiff who seeks damages for violation of constitutional or
statutory rights may overcome the defendant official's qualified

15

immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Id.* at 197.

Also without merit is Plaintiff's attempt to characterize the Third Circuit Court's reliance in *Renchenski* on existing Supreme Court precedent and decisions from other circuits as an indication that the due process right at issue was firmly established. (*See* Doc. 141 at 7-10.)  Reviewing *Renchenski's* extensive analysis of the due process issue, 622 F.3d at 325-331, the Circuit Court did far more that "merely reiterat[e] and appl[y] 'firmly established precedence [sic]'" (Doc. 141 at 8).  This conclusion is supported by *Warner's* clear determination that the right of an inmate who has not been convicted of a sexual offense to due process before sex offender conditions may be imposed was not clearly established before *Renchenski*.[2]  429 F. App'x at 178.

_____

[2]  With this determination, we do not conclude that a lack of binding precedent in the Third Circuit on the precise issue presented is necessary for qualified immunity.  To the contrary, in addressing the issue of qualified immunity in a prisoner civil rights case contextually and factually distinct from the case considered here, the Third Circuit Court of Appeals was not persuaded by the defendant's arguments that the right was not clearly established based on "the absence of binding precedent in this circuit, the doubts expressed by the most analogous appellate holding, [and] the conflict among a handful of district court opinions." *Williams v. Bitner*, 455 F.3d 186, 192 (3d Cir. 2006). The Court responded to these arguments as follows:

> First, although the Third Circuit has not ruled on the specific right asserted by Williams, we have observed that "[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is

Because the right at issue was not "clearly established" when Defendant's Fourteenth Amendment due process rights were violated, we conclude Magistrate Judge Smyser properly determined Defendants are entitled to qualified immunity on this claim.[3]

_____

> not necessary that there be binding precedent from this circuit so advising." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 & n.4 (3d Cir. 2001) (denying qualified immunity despite absence of Third Circuit precedent establishing the right asserted by plaintiff); *see also Kopec, v. Tate*, 361 F.3d 772, 777-78 & n.6 (3d Cir. 2004) (finding right clearly established even though neither Supreme Court nor the Third Circuit had ruled on the issue); [*Doe v.*] *Delie*, 257 F.3d [309,] at 321 & n.11 [(3d Cir. 2001)] (granting qualified immunity but observing that "[t]he absence of circuit precedent does not mean an official will always retain the immunity defense").  To that end, we routinely consider decisions by other Courts of Appeals as part of our "clearly established" analysis when we have not yet addressed the right asserted by the plaintiff.  *See*, *e.g.*, *Kopec*, 361 F.3d at 778 . . . ."

*Williams*, 455 F.3d at 192-93.  Further, *Williams* noted that the majority in *Delie* stated that although district court opinions cannot establish the law of the circuit, such opinions may be relevant to the "clearly established" analysis.  455 F.3d at 193 n.7 (citing *Delie*, 257 F.3d at 321 & n.10).

Here *Warner v. McVey* distinguishes this case from those discussed in *Williams v. Bitner*.


[3]  Plaintiff's arguments regarding motive and punitive damages (*see* Doc. 141) are without merit in that they are issues which would be considered only if Defendants were not immune from suit on Plaintiff's Fourteenth Amendment due process claim.

17

**C.    Clear Error Review**

    To the extent, Magistrate Judge Smyser addresses issues to which Plaintiff does not specifically object, we find no clear error.

### III. Conclusion

    For the reasons discussed above, we adopt Magistrate Judge Smyer's Report and Recommendation (Doc. 139) as modified and grant Defendants' Motion for Summary Judgement (Doc. 134). An appropriate Order is filed simultaneously with this Memorandum.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge

DATED: August 16, 2012

18